UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| EDWARD GATHRIGHT,<br><br>        Plaintiff,<br><br>     v.<br><br>CITY OF PORTLAND;<br>and PIONEER COURTHOUSE<br>SQUARE OF PORTLAND, INC.<br><br>        Defendants.<br>─────────────────────────<br>JAMES WEBBER; PAUL DEPARRIE;<br>CLAUDIU PUHA; ROBERT STEPHENS;<br>and MICHAEL CARR,<br><br>        Plaintiffs,<br><br>     v.<br><br>CITY OF PORTLAND; DERRICK<br>FOXWORTH; ZARI SANTNER;<br>DAVID MEYER; OFFICER ISMAIL;<br>OFFICER MORESCHI; AUDIE RHODES;<br>BRET BARNUM; DARKE HULL;<br>CHERYL WADDELL; and BRYAN PARMAN,<br><br>        Defendants. | Civil No. 03-130-HA<br><br>OPINION AND ORDER<br><br><br><br><br><br><br><br>CONSOLIDATED CASES<br><br>Civil No. 06-636-HA |

HAGGERTY, Chief Judge:

      Plaintiff Edward Gathright (plaintiff Gathright), an evangelical Christian preacher, brought the lead case of *Gathright v. City of Portland, et al.*, Civil No. 03-130, (hereinafter *Gathright I*), in April 2003. Plaintiff Gathright alleged that the named defendants (the *Gathright*

OPINION AND ORDER- 1

defendants) violated his First Amendment rights by enforcing a city ordinance, PCC 20.08.060,[1] and forcing him to leave open events by threatening him with arrest for trespass. The court entered a permanent injunction against defendants, which was subsequently modified on plaintiff's motion.

These decisions were appealed, and the Ninth Circuit affirmed. [102] However, the Ninth Circuit remanded the action for this court to (1) "reconsider the appropriateness of [the] injunction" in light of the subsequent repeal and replacement of PCC 20.08.060, and (2) "take into consideration potential ambiguities in [the] injunction as currently written." *Gathright v. City of Portland*, 439 F.3d 573, 582 (9th Cir. 2006) (hereinafter, *Gathright II*).

In May 2006, plaintiff James Webber and other evangelical Christian preachers (collectively, the *Webber* plaintiffs) sued the City of Portland, the Chief of the Portland Police Bureau, the Director of the Portland Parks Bureau, and several Portland police officers (collectively, the *Webber* defendants). *Webber, et al. v. City of Portland, et al.*, Civil No. 06-636 (hereinafter, *Webber*). That action was consolidated with *Gathright I* in August 2006.

Plaintiff Gathright and the *Webber* plaintiffs (collectively, plaintiffs) now move to modify and restate the permanent injunction in *Gathright I* as follows: First, plaintiffs move to terminate the provision enjoining further enforcement of PCC 20.08.060 as moot in light of its repeal and replacement. This aspect of plaintiffs' motion is unopposed by defendants from the consolidated cases (collectively, defendants). Second, plaintiffs move to extend the permanent injunction to fenced or gated events that are open to the public. Defendants oppose this aspect of

---

[1] PCC 20.08.060 was titled "Unlawful Interference" and prevented "any person" from "unreasonably" interfering with a permittee's use of a park.

OPINION AND ORDER- 2

the motion. Third, plaintiffs move to amend the injunction to remedy certain possible ambiguities in the injunction identified by the Ninth Circuit.

Additionally, the *Webber* plaintiffs move for partial summary judgment and a permanent injunction enjoining the *Webber* defendants from all activities as to which the *Gathright* defendants are enjoined in *Gathright I* [21]. The *Webber* defendants oppose this motion to the extent it seeks to apply the *Gathright I* injunction to fenced or gated events that are open to the public.

The court heard oral argument on these motions on March 12, 2007. For the following reasons, plaintiffs' Motions to Modify and Restate the Permanent Injunction [20] [115] are granted in part, and the *Webber* plaintiffs' Motion for Partial Summary Judgment Granting Permanent Injunction [21] is granted.

## QUESTIONS PRESENTED

1(a).   Whether the part of the final injunction prohibiting enforcement of former PCC 20.08.060 is moot and should be terminated.

1(b).   Whether the final injunction should be modified to extend explicitly to events that are gated or fenced, but are open to the public.

1(c).   Whether the court should further modify the final injunction in view of the Ninth Circuit's decision in *Gathright II*.

2.   Whether the court should enter a final injunction in *Webber* in the form requested in the lead companion case *Gathright I*, explicitly applying the *Gathright* injunction to fenced events open to the public.

## BACKGROUND

Plaintiff Gathright is an evangelical Christian who has taken to preaching in various locations in the City of Portland (the City), including at Pioneer Courthouse Square, Waterfront Park, and often at privately-sponsored, City-permitted events. Plaintiff Gathright's preaching

OPINION AND ORDER- 3

includes yelling and carrying signs with written religious messages. Plaintiff Gathright admitted that it is "not unusual" for people who hear his messages "to become upset" or "angry" when, for instance, he calls women "whores," "sluts," "Jezebels," "prostitutes," and "daughters of Babylon," or, at an event celebrating tolerance of homosexuality, he carries signs reading, "Got Aids Yet?" Def.'s Resp. to Pl. Gathright's Mot. to Modify and Restate Permanent Inj., ¶¶ 2-4.

Plaintiff Gathright claimed that his First Amendment rights were violated when Portland police officers forced him to leave events he attended by threatening him with arrest for trespass. Such actions were founded on PCC 20.08.060, which allowed a permittee to order a person to leave an open event when that person "unreasonably" interferes with the permittee's use of the licensed space; provided for police enforcement of such an order; and made an attendee's failure to obey such order a Class C misdemeanor under Oregon criminal law.

On April 6, 2004, this court entered a permanent injunction barring defendants from enforcing PCC 20.08.060, and from removing plaintiff Gathright and others similarly situated from areas outside or inside the boundaries under the control of an event permit absent probable cause to believe that they have violated a statute or ordinance.

Plaintiff Gathright subsequently moved for an order to show cause why the City should not be held in contempt, and to modify the injunction. He asserted that the City had violated the permanent injunction by arresting, detaining, and/or removing him and other street preachers from various public events in 2004, including The Bite, the Cinco de Mayo event, and the Portland Pride Parade, all held at Waterfront Park.

It is undisputed that all three of these events were fenced. At the modification hearing, this court told representatives of Cinco de Mayo, a fenced event, that "they can't refuse to sell

OPINION AND ORDER- 4

[plaintiff Gathright] tickets, unless they're causing some disturbance that violates a law, statute or ordinance." The court admonished the Cinco de Mayo representatives that if they engaged in such conduct, they would be "heavily fined." Tr. of Hr'g, Apr. 25, 2005, at 19-20.

On May 2, 2005, the court granted plaintiff Gathright's motion and modified the permanent injunction to require the *Gathright* defendants to (1) delete language authorizing eviction without probable cause from City permits; (2) notify all permit holders of the injunction and its provisions; (3) add a section to permits notifying future permit holders of the injunction; (4) notify Portland's police officers of the injunction; and (5) not place unreasonable time, place, and manner restrictions on plaintiff's speech or that of others similarly situated.

Effective June 15, 2005, the Portland City Council repealed PCC 20.08.060 and replaced it with a substantially more detailed ordinance prohibiting various kinds of behavior by attendees at events held under permit.

The *Gathright* defendants appealed this court's decisions granting a permanent injunction and the subsequent modifications. The Ninth Circuit affirmed the court's underlying First Amendment analysis and its conclusion that PCC 20.08.060 is not a valid, time, place, manner restriction, and upheld the permanent injunction. The Ninth Circuit also affirmed the modifications to the injunction.

However, the Ninth Circuit remanded this case for the court to consider the appropriateness of the injunction in light the City's action repealing and replacing PCC 20.08.060. The court also noted that, on remand, the court "may take into consideration the potential ambiguities in its injunction as currently written." *Gathright II*, 439 F.3d at 582. Plaintiff Gathright and the *Webber* plaintiffs subsequently filed the instant motions.

OPINION AND ORDER- 5

**STANDARDS**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is not proper if material factual issues exist for trial.  *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial.  *Id*. at 324.  Assuming that there has been sufficient time for discovery, summary judgment should be entered against a "party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id*. at 322.

Special rules of construction apply to evaluating summary judgment motions:  1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party;  2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party; and 3) the court must assume the truth of direct evidence set forth by the nonmoving party if it conflicts with direct evidence produced by the moving party.  *T.W. Elect. Serv. v. Pac. Elect. Contractors*, 809 F.2d 626, 630 (9th Cir. 1987).  When different ultimate inferences can be reached, summary judgment is not appropriate.  *Sankovich v. Life Ins. Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

To be entitled to a permanent injunction, the party seeking the injunction must actually

OPINION AND ORDER- 6

succeed on the merits. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12 (1987). The party must also show that there is no adequate remedy at law. *Continental Airlines v. Intra Brokers, Inc.,* 24 F.3d 1099, 1102 (9th Cir. 1994). If there is the possibility of future wrongful conduct, a legal remedy is inadequate. *Orantes-Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990).

## ANALYSIS

### 1. Plaintiffs' Motion to Modify and Restate Permanent Injunction

Plaintiffs from both cases have moved to (a) terminate as moot the provision prohibiting enforcement of former PCC 20.08.060; (b) modify the injunction to extend explicitly to events that are fenced, but open to the public; and (c) further modify the injunction in view of the possible ambiguities identified in *Gathright II*.

#### a. Termination of Provision Barring Enforcement of Former PCC 20.08.060

The parties agree that the portion of the injunction barring enforcement of PCC 20.08.060 should be terminated in light of the fact that the ordinance was repealed and revised in June 2005. The portion of the existing injunction barring enforcement of that ordinance in its previous form was rendered moot by repeal of the old ordinance and passage of revised PCC 20.08.060, Ordinance No. 179337, in June 2005. Accordingly, the provision of the injunction enjoining defendants from enforcing former PCC 20.08.060 is terminated as moot.

The court need not consider the revised ordinance, which became effective after all of the events at issue in *Gathright I* and *Webber*, and so is not at issue in these consolidated cases. Terminating this portion of the injunction does not terminate the consolidated cases because active issues remain, including the issue whether the existing injunction includes or should be

OPINION AND ORDER- 7

extended to include gated and fenced events that are open to the public. *See, e.g., United Parcel Serv., Inc. v. Cal. Pub. Utils. Comm'n*, 77 F.3d 1178, 1181-82 (9th Cir. 1989) (holding that action was not rendered moot by statutory change because grounds for further relief or liability still existed).

      **b.**    **Extension of Injunction to Include Gated and Fenced Events Open to Public**

*Gathright II* acknowledged an argument by the City on appeal that the gated/ fenced events that led to the modifications were outside the scope of plaintiff Gathright's original Complaint. 439 F.3d at 580-81. The Ninth Circuit declined to hold the injunction invalid on that basis, or determine whether the injunction would be invalid if it applied to gated and fenced events because it determined that the modifications "did not expand the prior injunction's scope to 'gated and fenced' events." *Id.*

Plaintiffs from the consolidated cases now argue that this court should expressly extend the permanent injunction to apply to all public events in the City's parks, whether fenced or unfenced. Defendants oppose this motion.

The court decided this issue in plaintiffs' favor implicitly when it granted plaintiff Gathright's Motion for Order to Show Cause on May 2, 2005. In granting that motion, the court implicitly accepted plaintiff Gathright's contentions that defendants violated the permanent injunction by arresting, excluding, and detaining him and other street preachers at three fenced events that were open to the public. As noted above, the court was aware that these events were fenced when it granted the motion. At the modification hearing, the court specifically stated that Cinco de Mayo representatives could not refuse to sell tickets to plaintiff Gathright or other street preachers unless they had caused a disturbance that violated a law, statute, or ordinance.

OPINION AND ORDER- 8

Additionally, the First Amendment analysis that the Ninth Circuit upheld in *Gathright II* provides no basis for distinguishing fenced events from other events open to the public. The same competing rights are at issue whether or not an event is fenced: "[Plaintiffs'] right to speak must be weighed against the City's interest in protecting its permittees' speech from being diluted by what [plaintiffs] say[]." *Id.* at 576. The Ninth Circuit recognized two sets of distinctions as relevant in weighing these competing interests.

First, the Ninth Circuit distinguished between event attendees and event participants. A preacher's right to speak trumps a permittee's right not to have its message diluted if the preacher "seeks only to be heard, not to have his speech included or possibly confused with another's," and "there is no risk that [the speaker's] provocations could be mistaken by anybody as part of the message of the events he protests." *Id.* at 578, citing *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 574 (1995) and *BSA v. Dale*, 530 U.S. 640, 656 (2000).

Whether an event is fenced is irrelevant to this attendee/ participant distinction. Placing a fence around an otherwise public event does not transform plaintiffs from attendees into participants. Defendants' contention that "if an event was gated and fenced and contained a small area, for example 10' x 10' or 50' by 100', it would be practically impossible for individuals such as plaintiff[s] to be [] attendee[s] rather than [] participant[s]," is unpersuasive. Defs.' Resp. to Pl.'s Mot. to Modify and Restate Permanent Inj. at 6. Practically speaking, such small events would be unlikely to attract evangelical preachers like plaintiffs, who are drawn to large crowds. Moreover, defendants' argument is contrary to the Ninth Circuit's reasoning in *Gathright II*. *See* 439 F.3d at 577 ("Merely being present at a public event does not make one part of the

OPINION AND ORDER- 9

organizer's message for First Amendment purposes").

Second, the Ninth Circuit distinguished between events that are open to the public and closed events that are "limited to the members of [an] organization and their invitees." *Id.* at 579 (citing *Sistrunk v. City of Strongsville*, 99 F.3d 194, 196 (6th Cir. 1996)). Plaintiffs' motion does not run afoul of this distinction, either. Plaintiffs have not moved to modify the injunction to include closed events, only public ones. Defendants' contention that fencing or gating an otherwise public event transforms it into a closed event is untenable. Such a ruling would allow defendants to defeat plaintiffs' rights under the First Amendment merely by fencing every public event. A letter from the president of Pride NW to the City's Parks Permit Center makes clear that one reason the Gay Pride Festival began fencing its events was to limit attendance by preachers. *See* Aff. of Kelly Ford, Ex. 1.

Defendants' reliance on a decision from the Eastern District of Pennsylvania, *Startzell v. City of Philadelphia*, No. 05-05287, 2007 WL 172400 (E.D. Penn. Jan. 18, 2007), is also misplaced. There is no indication that the event at issue in *Startzell* was fenced or gated. *See id.* at *2. Therefore, that case does not assist defendants' argument that the injunction should not extend to fenced or gated events that are open to the public. Even if the event were fenced or gated, *Startzell* is distinguishable from the case at bar because those street preachers, unlike plaintiffs, were charged with violating a number of state criminal statutes. *See id.* at *7, n.5. Finally, *Startzell* runs contrary to the Ninth Circuit's reasoning in *Gathright II*, since the *Startzall* court rejected the distinction between attending and participating in a public event. *Id.* at *22.

The court also rejects defendants' argument that there is no longer a "possibility of future wrongful conduct" to support a permanent injunction, based on "the lack of any complained of

OPINION AND ORDER- 10

incidents by plaintiffs over the last year and a half." Defs.' Resp. to Pl.'s Mot. to Modify and Restate Permanent Inj. at 6-7. Any decrease in the number of complaints can be attributed to the parties' understanding, based on the court's admonitions at the modification hearing, that refusing to sell tickets to plaintiffs would violate the permanent injunction. A decision from this court excluding fenced or gated events from the injunction would eliminate that understanding and reopen the conflict that the modified permanent injunction had resolved.

For these reasons, the court extends the modified permanent injunction, as set forth in the court's April 6, 2004 Opinion and Order and May 2, 2005 Order, to include gated or fenced events that are open to the public.

### c. Other Proposed Modifications to the Injunction

*Gathright II* also acknowledged three provisions in the modified permanent injunction that "could be read to occasion absurd consequences contrary to the district court's intent and irrelevant to the constitutional concerns in this dispute." *Gathright II*, 439 F.3d at 581. The provision requiring the City to delete from its event permits the "Rules of Conduct" section could be interpreted more broadly than this court intended as disallowing the City from printing *any* rules of conduct on its permits. That provision is deleted and replaced with narrower language.

The court also noted that the modified injunction's reference to an "impediment to pedestrian or vehicular traffic" could be interpreted as preventing the City from evicting an attendee who violates a legitimate statute. *Id.* Similarly, the provision enjoining defendants from preventing plaintiffs and others from "wearing signs or passing out pamphlets" could be construed as conflicting with cases allowing states to prohibit the use of certain kinds of signs. *Id.* (citing *Vlasak v. Superior Court of Cal.*, 329 F.3d 683 (9th Cir. 2003)). Accordingly, those

incidents by plaintiffs over the last year and a half." Defs.' Resp. to Pl.'s Mot. to Modify and Restate Permanent Inj. at 6-7. Any decrease in the number of complaints can be attributed to the parties' understanding, based on the court's admonitions at the modification hearing, that refusing to sell tickets to plaintiffs would violate the permanent injunction. A decision from this court excluding fenced or gated events from the injunction would eliminate that understanding and reopen the conflict that the modified permanent injunction had resolved.

For these reasons, the court extends the modified permanent injunction, as set forth in the court's April 6, 2004 Opinion and Order and May 2, 2005 Order, to include gated or fenced events that are open to the public.

### c. Other Proposed Modifications to the Injunction

*Gathright II* also acknowledged three provisions in the modified permanent injunction that "could be read to occasion absurd consequences contrary to the district court's intent and irrelevant to the constitutional concerns in this dispute." *Gathright II*, 439 F.3d at 581. The provision requiring the City to delete from its event permits the "Rules of Conduct" section could be interpreted more broadly than this court intended as disallowing the City from printing *any* rules of conduct on its permits. That provision is deleted and replaced with narrower language.

The court also noted that the modified injunction's reference to an "impediment to pedestrian or vehicular traffic" could be interpreted as preventing the City from evicting an attendee who violates a legitimate statute. *Id.* Similarly, the provision enjoining defendants from preventing plaintiffs and others from "wearing signs or passing out pamphlets" could be construed as conflicting with cases allowing states to prohibit the use of certain kinds of signs. *Id.* (citing *Vlasak v. Superior Court of Cal.*, 329 F.3d 683 (9th Cir. 2003)). Accordingly, those

provisions are deleted.

2.   ***Webber* Plaintiffs' Motion for Partial Summary Judgment and Permanent Injunction**

The *Webber* plaintiffs move for partial summary judgment and entry of a final injunction in the form requested in the lead companion case of *Gathright I*. The court finds, and the *Webber* defendants do not dispute, that the *Webber* plaintiffs are similarly situated to plaintiff Gathright. Accordingly, there is no genuine dispute as to whether the court should enter the modified permanent injunction from *Gathright I*, as set forth in the April 6, 2004 Opinion and Order and May 2, 2005 Order, in favor of the *Webber* plaintiffs. For the reasons stated above, the court modifies the permanent injunction to encompass events that are fenced or gated, but are open to the public.

## **CONCLUSION**

For the foregoing reasons, the *Webber* plaintiffs' Motion for Partial Summary Judgment Granting Permanent Injunction [21] is granted, and the court enters a final injunction in *Webber* in the form set out in the lead companion case of *Gathright I*. Plaintiffs' Motions to Modify and Restate the Permanent Injunction [20] [115] are granted in part, and the court reinstates and modifies the permanent injunction as follows:

Defendants are permanently enjoined from denying entry to or removing plaintiffs and others similarly situated from an area outside or inside of the boundaries under the control of any permitted event that is open to the public, unless there is probable cause to believe that they have violated a duly enacted statute or ordinance. This prohibition extends to fenced or gated events that are open to the public.

In addition, the City is ordered to:

OPINION AND ORDER- 12

- delete from the "Rules of Conduct" section of its event permits all language authorizing "Persons in Charge" to evict or exclude persons from permitted areas – such persons may only be excluded if there is probable cause to believe that they have violated a duly enacted statute or ordinance;

- notify all event permit holders that they may not deny entry to plaintiffs or any other person similarly situated to any permitted event unless those persons have been previously lawfully excluded from the current event;

- add a section to the event permits that notifies future permit holders of the court's injunction and the limitations on their ability to exclude persons from their events; and

- notify all Portland police officers of the court's injunction and that the officers may not exclude persons based solely on the direction of the permit holder. The officers must have probable cause to believe that such a person has violated a duly enacted statute or ordinance.

In addition, the City and all permit holders are ordered to not place unreasonable time, place, and manner restrictions on plaintiffs' speech, or that of others similarly situated to plaintiffs. If the City or the permit holder has created a "free speech zone," or other similar area, such an area shall not be the only place where plaintiffs or others similarly situated are allowed to exercise their free speech rights, but shall be simply an option.

DATED this   9   day of April, 2007.

/s/ Ancer L. Haggerty  
Ancer L. Haggerty  
United States District Judge

OPINION AND ORDER- 13